**WAGNER & BROWN,**
Plaintiff-Appellant,

v.

**ANR PIPELINE COMPANY,**
Defendant-Appellee.

No. 87–2500.

United States Court of Appeals,
Fifth Circuit.

Feb. 10, 1988.

Rehearing Denied March 14, 1988.

Andrew Wooley, Everard A. Marseglia, Jr., Houston, Tex., for plaintiff-appellant.

B. Thomas Cook, Robert C. Williams, Houston, Tex., for defendant-appellee.

Before CLARK, Chief Judge, JOLLY and JONES, Circuit Judges.

CLARK, Chief Judge:

■ Wagner & Brown appeals the district court's dismissal of its action for damages for breach of a take-or-pay clause in a natural gas purchase contract. The district court did not abuse its discretion by deferring to the primary jurisdiction of the Federal Energy Regulatory Commission (FERC) for a determination of whether such take-or-pay issues affected the maximum lawful price of natural gas. The judgment appealed from is affirmed. However, to avoid possible prejudice to Wagner & Brown's rights under the contract, we direct the district court to modify its order dismissing the cause to provide that the action be stayed for 180 days to permit FERC to exercise its jurisdiction.

## I.

This dispute arises from a contract for the sale of natural gas entered into between Wagner & Brown and ANR pipeline in August 1981. Under the terms of the contract, ANR Pipeline Company, a shipper and seller of natural gas, agreed to purchase natural gas produced by Wagner & Brown. Article IV of the contract contains a minimum purchase obligation, commonly known as a "take-or-pay" provision, under which ANR is obligated to take 75% of the gas produced at Wagner & Brown's wells or to pay Wagner & Brown as if this amount of gas was taken.[1]

Wagner & Brown alleges that from January 1984 through April 1986, ANR failed to take the minimum volumes of gas and

---

1. Article IV, section 1 of the contract provides:
    Seller agrees to sell and deliver to Buyer and Buyer agrees to purchase and receive from Seller, or to pay Seller for if available but not taken, the sum of the daily contract quantities in effect during each accounting year. Subject to the other provisions hereof, the daily contract quantity shall be equal to seventy-five (75) percent until January 1, 1983, and eighty (80) percent thereafter, of the sum of Seller's gas well gas deliverability from each gas well hereunder. Within sixty (60) days after the date of initial delivery of gas from each gas well subject to this Agree-

ment, Seller's gas well gas deliverability for such well shall be determined by conducting the deliverability test provided for in Section 4 of this Article, which test shall be used to establish the daily contract quantity hereunder effective as of the date of initial delivery from such well. If at any time thereafter a well subject to this Agreement is reworked, Seller may request in writing that a deliverability test be conducted for such well as provided in said Section 4. In addition, Buyer agrees to take and pay for all legally produced oil well gas tendered by Seller hereunder.

did not meet the payment requirements under the contract. On July 31, 1986, Wagner & Brown filed suit against ANR in state court, seeking damages for breach of the contract. ANR removed to the Southern District of Texas. ANR then filed a complaint with the Federal Energy Regulatory Commission (FERC), asking FERC to issue an order that the take-or-pay prepayments would constitute unlawful payments in excess of the maximum natural gas prices established in the Natural Gas Policy Act of 1978, 15 U.S.C. §§ 3301–3432 (1982) (the NGPA).[2] ANR's complaint is currently pending before FERC.[3]

On the day that it filed its complaint with FERC, ANR filed a motion to dismiss Wagner & Brown's suit pending in the Southern District of Texas. ANR argued that dismissal was proper because FERC has exclusive or primary jurisdiction to consider whether take-or-pay prepayments violate NGPA price ceilings.

After a hearing on the motion, the district court dismissed Wagner & Brown's suit, finding that the controlling issues in the case were within FERC's primary jurisdiction. Wagner & Brown appeals.

## II.

■ Primary jurisdiction is a judicially created doctrine whereby a court of competent jurisdiction may dismiss or stay an action pending a resolution of some portion of the action by an administrative agency. The doctrine is invoked:

> "whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views."

*United States v. Western Pacific R.R. Co.,* 352 U.S. 59, 63–64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). It is a flexible doctrine to be applied at the discretion of the district court. *El Paso Natural Gas Co. v. Sun Oil Co.,* 708 F.2d 1011, 1020 (5th Cir.1983), *cert. denied,* 468 U.S. 1219, 104 S.Ct. 3589, 82 L.Ed.2d 887 (1984); *Mississippi Power & Light Co. v. United Gas Pipe Line Co.,* 532 F.2d 412, 418 (5th Cir.1976), *cert. denied,* 429 U.S. 1094, 97 S.Ct. 1109, 51 L.Ed. 2d 541 (1977). Application of the doctrine is especially appropriate where:

> "uniformity of certain types of administrative decisions is desirable, or where there is a need for the 'expert and specialized knowledge of the agencies.'"

*Avoyelles Sportsmen's League, Inc. v. Marsh,* 715 F.2d 897, 919 (5th Cir.1983) (*quoting, Western Pacific, supra,* 77 S.Ct. at 165).

■ A court considering deferring to an agency's primary jurisdiction must weigh the benefits of obtaining the agency's aid against the need to resolve the litigation expeditiously and may defer only if the benefits of agency review exceed the costs imposed on the parties. *Gulf States Utilities Co. v. Alabama Power Co.,* 824 F.2d 1465, 1473 (5th Cir.1987) (*citing, Mississippi Power & Light Co. v. United Gas Pipeline Co.,* 532 F.2d 412, 419 (5th Cir.1976), *cert. denied,* 429 U.S. 1094, 97 S.Ct. 1109, 51 L.Ed.2d 541 (1977).

In this case, the considerations of expertise and uniformity tip the scales in favor of deferral to FERC. FERC has acquired expertise on the subject of gas pricing while performing its rulemaking and price enforcement functions. The NGPA vested FERC with the power "to perform any and all acts (including any appropriate enforcement activity), and to prescribe, issue, amend, and rescind such rules and orders as it may find necessary or appropriate to carry out its functions under [the NGPA]." 15 U.S.C. § 3411(a) (1982). These activities have given FERC insight into why specific grades of gas should bear certain ceiling prices and how these ceilings contribute to the overall policy of natural gas price regulation. FERC's insight gives it special competence to determine what components

---

**2.** *ANR Pipeline Co. v. Wagner & Brown,* No. GP 86–54–000 (filed Sept. 8, 1986).

**3.** FERC issued public notice of ANR's complaint on October 9, 1986, 51 Fed.Reg. 36, 849.

should be included in the first sale price for natural gas.[4]

In addition, a ruling by FERC would create uniformity in the construction of take-or-pay clauses. Numerous district courts have ruled that take-or-pay payments do not violate federal NGPA price ceilings. *See, e.g., Sid Richardson Carbon & Gasoline Co. v. Internorth, Inc.,* 595 F.Supp. 497 (N.D.Tex.1984); *Koch Industries, Inc. v. Columbia Gas Transmission Corp.,* No. 83–990–A (M.D.La. filed Nov. 18, 1983), *aff'd sub nom., In re Columbia Gas Transmission Corp.,* No. 84–3282 (5th Cir. July 30, 1984); *Southport Exploration, Inc. v. Producer's Gas Co.,* No. 83–C–550–BT (N.D.Okla. filed March 13, 1984); *Challanger Minerals, Inc. v. Southern Natural Gas Co.,* No. 84–C–357–E (N.D. Okla.1986). The District of Columbia Circuit has recently indicated that Congress probably did not intend that take-or-pay provisions in producer contracts would violate the NGPA. *Associated Gas Distributors v. FERC,* 824 F.2d 981, 1022 n. 26 (D.C.Cir.1987)[5] However, several district courts have considered that take-or-pay payments might be a component of price and have referred individual cases to FERC for resolution. *See, e.g., Gulf Oil Corp. v. Tenneco, Inc.,* 608 F.Supp. 1493, 1503 (E.D. La.1985); *Post v. Perry Gas Transmission, Inc.,* 616 F.Supp. 1 (N.D.Tex.

1983); *Hamilton Brothers v. ANR Pipeline,* No. 86–6014 (S.D.Tex. filed Aug. 29, 1986). These disparate interpretations underscore the need for a definitive pronouncement from FERC.

If resolution of the issue is left to district courts, they may make different rulings regarding whether prepayments will be considered a component of price. A uniform rule is preferable because the interstate market for gas is a nationwide market regulated under a single act of Congress. Conflicting decisions among the districts, even when brought into closer conformity by appellate decisions, are at best a patchwork solution to a problem that requires uniform resolution. The district court acted within its discretion to rely on FERC to issue such a uniform ruling in the first instance.

■ Although we agree that FERC has primary jurisdiction, we do not accept ANR's further argument that FERC has exclusive jurisdiction over construction of take-or-pay contracts. FERC itself has recognized federal court jurisdiction over suits involving the construction of contracts for the sale of natural gas. *See, e.g., Hall v. FERC,* 691 F.2d 1184, 1188 (5th Cir.1982), *cert. denied,* 464 U.S. 822, 104 S.Ct. 88, 78 L.Ed.2d 961 (1983). *Arkansas Louisiana Gas Co. v. Hall,* 55 F.P.C. 1018, 1020 (1976).

---

4. FERC itself has recognized its competence to determine the components of the price of natural gas. *See e.g., Wisconsin Gas Co. v. FERC,* 770 F.2d 1144, 1152 (D.C.Cir.1985), *cert. denied,* 476 U.S. 1114, 106 S.Ct. 1968, 90 L.Ed.2d 653 (1986) (discussing FERC Order 380, 49 Fed.Reg. 2,778 (1984), in which FERC chose not to prohibit variable-cost components in take-or-pay clauses). It has expressed a willingness to hear individual rate cases filed by pipelines seeking a determination of "the amount of take-or-pay costs to be included as prudent costs in its just and reasonable rates." Congressional Letter from FERC Chairman Anthony G. Sousa to Honorable Frank Horton (June 27, 1986).

5. In *Associated Gas Distributors,* the D.C. Circuit stated:

[T]he Commission might find that a contract that provided for sale at the NGPA ceiling *and* allowed a producer to keep take-or-pay prepayments even after it has resold the gas to another party, was in effect a contract for sale

at a price in excess of the NGPA ceiling.... We find this premise somewhat improbable. In enacting the NGPA ceilings, Congress must have been aware that producers and pipelines would incorporate these ceilings into long-term contracts, and that the contracts would include remedies for producers. Obviously the remedial rights would constitute value. If any such value put into breach of the NGPA a contract nominally at the NGPA ceiling, the NGPA would provide a most uncertain guide. Congress may well have supposed that state rules against penalty clauses would suffice to prevent exorbitant remedial provisions. Even assuming *arguendo* that clauses restricting recoupment would violate NGPA ceilings, we do not believe that FERC was obliged to consider the issue in this proceeding in the absence of reason to believe that the economic value of these obligations forms a major portion of the discrepancy between pipeline average contract prices and the wellhead price for newly available gas."

824 F.2d at 1022 n. 26 (citations omitted).

### III.

Wagner & Brown presents essentially five objections to the district court's finding of primary jurisdiction. We will consider them in turn.

#### A) *FERC's Jurisdiction over ANR's Complaint*

Wagner & Brown argues that FERC lacks jurisdiction over its dispute with ANR because the dispute is purely contractual. Wagner & Brown states that FERC's authority under the NGPA does not encompass the interpretation of producer-pipeline contracts but rather is limited to determining whether a gas producer is entitled to increase his price to the level mandated by Congress in the NGPA.[6] *Columbia Gas Development Corp. v. FERC*, 651 F.2d 1146, 1159 n. 15 (5th Cir.1981); *Pennzoil Co. v. FERC*, 645 F.2d 360, 380–81 n. 41 (5th Cir.1981), *cert. denied*, 454 U.S. 1142, 102 S.Ct. 1000, 11 L.Ed.2d 293 (1982). We disagree.

The NGPA provides that "[i]t shall be unlawful for any person (1) to sell natural gas at a first sale price[7] in excess of any applicable maximum lawful price under this chapter ..." 15 U.S.C. § 3414(a)(1) (1982). The Act and the regulations duly promulgated give FERC the power to seek injunctions against sales of gas above the price ceilings.[8] Hence, as Wagner & Brown argues, FERC's primary duty under the NGPA is to determine what price ceiling applies to a particular shipment of natural gas. However, implicit in this duty is FERC's authority to determine which payments required under producer-pipeline contracts will be included in the "price" of natural gas. For FERC to effectively exercise its authority to bring suit to enjoin violations of NGPA price ceilings, it must have jurisdiction to determine which payments constitute components of the price of natural gas.

Because ANR's action turns on the issue of whether take-or-pay payments are a component of the price of gas, FERC must have jurisdiction to hear the complaint. ANR argues that because it has already paid the statutory maximum price for gas taken from January 1984 through April 1986, the prepayments for gas not taken must be considered a component of the price paid for the gas actually received. This is so because ANR cannot make up the payments in later shipments of gas.[9] ANR asserts that making these prepayments will raise the price of the gas above the NGPA ceilings and will render the contract illegal. ANR contends that this il-

---

**6.** When Congress passed the NGPA, it eliminated FERC's ratemaking authority over first sales of natural gas which was first granted in the Natural Gas Act, 15 U.S.C. § 717 *et seq.* (1976). In place of ratemaking authority, the NGPA established congressionally mandated ceiling prices for natural gas.

**7.** A "first sale" is defined as "any sale of any volume of natural gas—(i) to any interstate pipeline or intrastate pipeline;" 15 U.S.C. § 3301(21)(A) (1982). The parties conceded at oral argument that their contract involved a first sale of natural gas.

**8.** The NGPA provides that:

"[W]henever it appears to the Commission that any person is engaged or about to engage in any act or practice which constitutes or will constitute a violation of any provision of this chapter, or of any rule or order thereunder, the Commission may bring an action in the District Court of the United States for the District of Columbia or any other appropriate district court of the United States to enjoin such act or practice and to enforce compliance with this chapter ..."
15 U.S.C. § 3414(b)(1) (1982).
The Code of Federal Regulations provides that:

"(a) *General rule.* Any person may file a complaint seeking Commission action against any other person alleged to be in contravention or violation of any statute, rule, order, or other law administered by the Commission, or for any other alleged wrong over which the Commission may have jurisdiction."
18 C.F.R. § 385.206 (1987).

**9.** The contract provides that prepayments are nonrefundable but that ANR may make up the payments within five years by accepting quantities of gas corresponding to the payments. This meets the requirements of 18 C.F.R. § 154.103 (1987) which states that jurisdictional contracts must contain a five year opportunity period for make-up of take-or-pay payments. However, ANR states that it will not be able to take additional quantities of gas and that therefore prepayments must be added to the price of gas.

legality is a complete defense to Wagner & Brown's suit.

ANR's argument parallels the issue that confronted the Supreme Court in *United States v. Western Pacific R.R. Co., supra.* In *Western Pacific*, the Supreme Court was asked to decide whether "steel casings filled with napalm gel are incendiary bombs" and subject to a tariff on the transportation of completed bombs. *Western Pacific*, 77 S.Ct. at 166. The Court upheld the lower court's finding of primary jurisdiction. It stated that the construction of a tariff should be considered first by the ICC and not by a court because the ICC possessed the technical expertise to know why incendiary bombs were shipped at a higher tariff rate than non-incendiary bombs and because of the "desirable uniformity which would obtain if initially a specialized agency passed on certain types of administrative questions." *Western Pacific*, 77 S.Ct. at 165 (*citing, Texas & Pacific R. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907)). The court stated:

"[courts] do not know whether the 'incendiary quality of the freight' was in fact the only reason for the high rate, still less whether that was the only reason and how much weight should be assigned to it. Courts which do not make rates cannot know with exactitude the factors which go into the rate-making process. And for the court here to undertake to fix the limits of the tariff's application without knowledge of such factors, and the extent to which they are present or absent in the particular case, is tantamount to engaging in judicial guesswork.

It was the Commission and not the court which originally determined why incendiaries should be transported at a high rate. It is thus the Commission which should determine whether shipments of napalm gel bombs, minus bursters and fuses, meet those requirements; that is, whether the factors making for certain costs and thus a certain rate on incendiaries are present in the carriage of such incompleted bombs."

*Western Pacific, supra,* 77 S.Ct. at 167.

By similar logic, the relationship between natural gas price ceilings and the cost effects of take-or-pay clauses in producer-pipeline contracts is a question best considered in the first instance by FERC.

B) *FERC's willingness to rule on Wagner & Brown's claim*

Wagner & Brown next argues that even if FERC has jurisdiction over ANR's complaint, it will not hear the complaint because it has rebuffed all past requests that it resolve take-or-pay disputes between producers and pipelines. Wagner & Brown cites numerous cases where district courts have refused to refer take-or-pay questions to FERC [10] because of FERC's history of inaction, and cites take-or-pay cases which courts have referred to FERC but later withdrawn because of the agency's failure to act.[11]

Although FERC has evinced an unwillingness to act on take-or-pay cases, its reluctance does not establish that it cannot or should not hear these claims or that it will not hear them in the future. A brief synopsis of the problem of natural gas pricing

**10.** *See, e.g., Northwestern Mutual Life Insurance Co. v. ANR Pipeline Co.*, No. H–86–2189 (S.D. Tex. filed Oct. 2, 1986); *Marion Corp. v. United Gas Pipeline Co.*, No. 83–1192–C (S.D.Ala. filed May 2, 1985); *Forest Oil Corp. v. Tenneco, Inc.*, 622 F.Supp. 152 (S.D.Miss.1985); *Exxon Corp. v. Columbia Gas Transmission Corp.*, 624 F.Supp. 610, 611 (W.D.La.1985); *Superior Oil Co. v. Transco Energy Co.*, 616 F.Supp. 98 (W.D.La. 1985); *Danden Petroleum, Inc. v. Northern Natural Gas Co.*, 615 F.Supp. 1093 (N.D.Tex.1985); *Southport Exploration, Inc. v. Producer's Gas Co.*, No. 83–C–550–BT (N.D.Okla. filed March 13, 1984). *Sid Richardson Carbon & Gasoline Co. v. Internorth, Inc.*, 595 F.Supp. 497, 499 (N.D.Tex.1984); *Exxon Corp. v. Tenneco, Inc.*,

No. 83–1640 (W.D.La. filed Dec. 16, 1983), *aff'd sub nom., In re: Tenneco, Inc.*, No. 84–4074 (5th Cir. July 30, 1984); *Samson Resources Co. v. Internorth, Inc.*, No. 82–C–1214E (N.D.Okla. filed Nov. 21, 1983); *Koch Industries, Inc. v. Columbia Gas Transmission Corp.*, No. 83–990–A (M.D.La. filed Nov. 18, 1983), *aff'd sub nom, In re: Columbia Gas. Transmission Corp.*, No. 84–3282 (5th Cir. July 30, 1984).

**11.** *See, e.g., Gulf Oil Corp. v. Tenneco, Inc.*, 608 F.Supp. 1493, 1502 (E.D.La.1985); *Post v. Perry Gas Transmission, Inc.*, 616 F.Supp. 1 (N.D. Tex.1983).

suggests why we believe FERC should and will act on ANR's complaint.

Congress enacted the NGPA in an effort to bring consumer prices for natural gas in line with steadily decreasing producer prices at the wellhead. *See e.g.*, FERC Order No. 436, 50 Fed.Reg. 42,408, 42,419 (Oct. 18, 1985). The NGPA did not achieve this result due in large part to pipelines' dual role as sellers and transporters of gas. Pipelines frequently refused to transport gas which they had not purchased because displacement of their gas with gas from other sellers left them with take-or-pay liability to producers yet provided insufficient revenues to offset their obligations to producers. The pipelines' refusal to transport gas in competition with their own sales froze consumers' cost of gas substantially above decreasing prices at the wellhead.

In an effort to correct disproportionately high consumer prices, FERC issued Order No. 380, 49 Fed.Reg. 21, 778 (June 1, 1984) and later Order No. 436, 50 Fed.Reg. 42,-493 (Oct. 18, 1985). These orders essentially removed the gas consumers' obligation to take high-priced gas from pipelines but did not relieve the pipelines' take-or-pay obligations to producers. *See e.g., Wisconsin Gas Co. v. FERC, supra,* 770 F.2d at 1152. A flood of litigation resulted as the pipelines, which had lost their assured market for gas, attempted to avoid their now uneconomic contracts with the producers. However, FERC made no effort to mitigate the effect of take-or-pay obligations on the pipelines.

In *Associated Gas Distributors v. FERC,* 824 F.2d 981 (D.C.Cir.1987), the D.C. Circuit considered whether FERC's continued inaction on producer-pipeline contracts was permissible in light of the shift of the balance of economic forces in favor of gas consumers. It concluded that inaction was not permissible and vacated a significant portion of Order 436. The court stated:

"Virtually all parties other than producers attack FERC's refusal to directly address the producer-pipeline con-

tracts.... FERC's inaction will permanently distort the structure of the natural gas market: by creating an artificial advantage for unbundled transportation service, it will cause the pipelines' merchant role to atrophy, despite the greater efficiency of bundled service....

We conclude that FERC's decision to do nothing more than reaffirm the April 1985 policy statement reflects questionable legal premises and fails to meet the requirement of "reasoned decisionmaking." Accordingly, we reverse and remand for further proceedings."

824 F.2d at 1023.

In response to *Associated Gas Distributors,* FERC issued Order No. 500, No. RM87–34–000 (August 7, 1987), in which it took a series of actions designed to mitigate the deleterious impact of take-or-pay contracts on pipelines. In Order 500, FERC recognized its need to act on take-or-pay problems, reaffirmed its jurisdiction to do so, proposed an interim response to the take-or-pay problem, solicited information from the pipelines which would be incorporated into a final rule and suggested that it might invoke its power under § 5 of the Natural Gas Act, 15 U.S.C. § 717d (1976), to set aside jurisdictional producer-pipeline contracts with take-or-pay provisions.

In light of these significant steps taken by FERC, the district court did not abuse its discretion by referring ANR's take-or-pay dispute to FERC. FERC's recent pronouncements signal a new willingness to act on producer-pipeline disputes and create a greater need to decide pending cases in conformity with anticipated rule-making proceedings.

### C) *Inappropriateness of judicial forum*

Wagner & Brown next argues that its suit is more properly before a court than before FERC because FERC cannot grant Wagner & Brown damages for breach of contract.

▮ We agree that the FERC lacks power to enforce Wagner & Brown's claim for damages under the contract.[12] However,

---

**12.** The NGPA gives FERC the authority to seek

injunctions against prospective violations of the

this does not deprive the FERC of primary jurisdiction over the take-or-pay issue. As the Supreme Court stated in *Western Pacific, supra,* primary jurisdiction may be invoked where *"enforcement* of the claim requires the resolution of issues ... within the special competence of an administrative body." 77 S.Ct. at 165 (emphasis added). Hence, under the doctrine, a court may refer discrete issues to an administrative agency while reserving to itself the power to take final action on the litigant's claims. The district court's order as modified is in conformity with this principle. The stay does not prejudice Wagner & Brown's right to collect damages on the contract, but merely delays enforcement pending a resolution of the take-or-pay question by FERC.

#### D) *Non-Jurisdictional Gas*

Wagner & Brown asserted at oral argument that the record is devoid of evidence that the contract involved jurisdictional gas. We decline to reach the ramifications of this issue which was not briefed and was first raised at oral argument.

#### E) *Inordinate Delay*

Finally, Wagner & Brown contends that the district court improperly deferred to FERC's primary jurisdiction because the delay which will likely attend resolution of ANR's claims will needlessly tie up payments owing to Wagner & Brown under the contract and will imperil Wagner & Brown financially. Wagner & Brown cannot seek redress elsewhere while waiting for FERC to act because the dismissal order and the determination of primary jurisdiction bar Wagner & Brown from pursuing its claims in another forum. *Stoll v. Gottlieb,* 305 U.S. 165, 172, 59 S.Ct. 134, 137–38, 83 L.Ed. 104 (1938); *Equitable Trust Co. v. Commodity Futures Trading Comm.,* 669 F.2d 269, 242 (5th Cir.1982).

Wagner & Brown's argument is persuasive. If the district court is allowed to decline jurisdiction, and FERC's past inac-

tion on this issue continues, any recovery of damages from ANR could be so delayed as to be ineffective even if Wagner & Brown's rights are eventually established. Yet, the doctrine of primary jurisdiction clearly indicates that the parties should seek the expertise of FERC. These aims are not necessarily incompatible. To ensure that Wagner & Brown's rights will not be unreasonably delayed or lost, we direct that the district court modify its judgment by vacating its order of dismissal and substituting an order staying proceedings before it for a period of 180 days to afford FERC an opportunity to rule on ANR's complaint. If no such ruling is forthcoming within that time, or such extension thereof as the district court is persuaded would not irreparably harm Wagner & Brown's rights and is required for good cause shown by FERC, then the district court should proceed to adjudicate the rights of the parties without further deference to the expertise of FERC.

AFFIRMED WITH DIRECTIONS.

---

Act but does not grant the power to award retrospective damages for breach of a producer-pipeline contract.  15 U.S.C. § 3414(a) (1982).