Joseph F. **FRITZ**, et al., Petitioners,

v.

**FEDERAL ENERGY REGULATORY COMMISSION**, Respondent.

**SOUTHERN NATURAL GAS COMPANY**, Petitioner,

v.

**FEDERAL ENERGY REGULATORY COMMISSION**, Respondent.

No. 88–4410.

United States Court of Appeals, Fifth Circuit.

July 12, 1989.

R. Wilson Montjoy, II, John M. Grower, Brunini, Grantham, Grower & Hewes, Jackson, Miss., and John C. Griffin, Birmingham, Ala., for petitioner, Southern Natural Gas Co.

Joel M. Cockrell, Jerome Feit, Sol., and Samuel Soopper, F.E.R.C., Washington, D.C., for respondent, F.E.R.C.

Before CLARK, Chief Judge,
BROWN and JOHNSON, Circuit
Judges.

CLARK, Chief Judge:

All interested parties petition for review of orders issued by the Federal Energy Regulatory Commission (FERC). The orders declared that a FERC regulation would be violated by payment for natural gas under a contract between the purchaser, Southern Natural Gas Company (Southern), and the sellers, Joseph F. Fritz and others. Fritz assigned a part of his interest to G.B. "Boots" Smith Corporation, Challenger International Services, Inc., and H. Lanier B. Foote (hereinafter collectively referred to as "Fritz"). Because FERC's application of its regulation to the present case departs from its prior precedent without reason, its orders are vacated.

*Regulatory Background*

In the National Gas Policy Act of 1978 (NGPA), 15 U.S.C. § 3301 et seq., "Congress comprehensively and dramatically changed the method of pricing [the wellhead sales of] natural gas produced in the United States." *Public Service Comm'n v. Mid–Louisiana Gas Co.*, 463 U.S. 319, 322, 103 S.Ct. 3024, 3027, 77 L.Ed.2d 668 (1983). Title I of the NGPA, 15 U.S.C. §§ 3311–3320, 3331–3333, "establishes an exhaustive categorization of natural gas production, and sets forth a methodology for calculating an appropriate ceiling price within each category." 463 U.S. at 332, 103 S.Ct. at 3032. Under Subtitle A of Title I, 15 U.S.C. §§ 3311–3320, those price ceilings gradually increase over time. *See FERC v. Martin Exploration Management Co.*, 486 U.S. 204, 108 S.Ct. 1765, 1768, 100 L.Ed.2d 238 (1988). In Subtitle B of Title I, 15 U.S.C. §§ 3331–3333, however, Congress provided a three-stage elimination of price ceilings for certain "deregulated" categories of natural gas. *Id.*

To ensure compliance with the regime established, the NGPA made it unlawful for any person "to sell natural gas at a first sale price in excess of any applicable maximum lawful price under [the NGPA]." 15 U.S.C. § 3414(a)(1). Congress specifically conferred on FERC such general rulemaking authority "as [FERC] may find necessary or appropriate to carry out its functions under [the NGPA]." 15 U.S.C. § 3411(a). Congress also empowered FERC to bring an action to enjoin "a violation of [the NGPA], or of any rule or order thereunder, ... and to enforce compliance with [the NGPA]." 15 U.S.C. § 3414(b)(1).

In 1980, FERC promulgated a rule as part of its continuing efforts to enforce compliance with the price ceilings established under the NGPA and the prohibition of 15 U.S.C. § 3414(b)(1). That rule, currently codified at 18 C.F.R. § 270.207 (Regulation 270.207), provides that "[n]o portion of the price paid for the first sale of deregulated natural gas ... may represent consideration for the sale of natural gas which is not deregulated natural gas." In its regulatory analysis of the final rule enacting Regulation 270.207, FERC announced that it "would consider sales in which part of the price paid for deregulated high-cost gas was paid as compensation for the sale of price-regulated gas to be circumventing applicable maximum lawful prices." Final Rule Defining and Deregulating Certain High Cost Gas, F.E.R.C. Stat. & Reg. ¶ 30,147, at 31,013 (1980).

FERC first applied Regulation 270.207 in *Columbia Gas Transmission Corp.*, 22 F.E.R.C. ¶ 63,093 (1982), *aff'd*, 26 F.E.R.C. ¶ 61,034, *on reh'g*, 26 F.E.R.C. ¶ 61,334 (1984), *on remand*, 28 F.E.R.C. ¶ 63,005, *settlement approved in*, 39 F.E.R.C. ¶ 61,245 (1987).

*Contractual Setting*

The contract between Southern and Fritz had its roots in a 1951 contract for the sale of natural gas between Southern and Humble Oil & Refining Company. In that contract, Southern agreed to purchase gas produced by Humble from the Sandy Hook Field located in Mississippi and Louisiana. In early 1978, Humble's successor in interest, Exxon Corporation, discovered gas in the Mississippi Canyon area off-shore of Louisiana. Later in the year, Exxon and Southern agreed to "upgrade and modernize" various contracts, which included adding provisions for Exxon to sell its Mississippi Canyon gas to Southern. Under the amendment which was finalized in 1979 Southern agreed to pay Exxon a rate for gas produced from the Sandy Hook Field no lower than the applicable NGPA lawful price. At that time Exxon was not selling Southern any deregulated gas from the Sandy Hook Field. The amendment provided that if any of the Sandy Hook gas were to be deregulated later, Southern would pay Exxon the average of the three highest prices Southern paid its non-affiliated producers for deregulated gas in the same area. This favored nations clause was only one of many new provisions added in the amendment. The agreement to amend the contract recited that the new provisions were added in "partial consideration" of Exxon's dedication to Southern of regulated gas from the Mississippi Canyon area.

In January 1980, Exxon began drilling a new well in the Sandy Hook Field. Exxon was unable to complete the well as a producer, and entered into a farm-out agreement with Fritz. Under the farm-out agreement, Fritz would earn an assignment of leases from Exxon if he completed the well as a commercially productive unit. In January 1983, after Fritz had completed the well at a depth of over 15,300 feet, Exxon assigned its working interest in the well to Fritz. Exxon reserved an overriding royalty interest in the gas produced from the well and the right to exchange that interest for a working interest upon payout. The assignment was made subject to Exxon's contract with Southern, as amended in 1979.

By January 1983, the Mississippi State Oil and Gas Board had issued a final determination that the gas produced from Fritz's deep well qualified as "high-cost natural gas." This determination placed the production from the Fritz well in a deregulated gas category under Section 107(c)(1) of the NGPA, 15 U.S.C. § 3317(c)(1). In February 1983, Fritz entered into an adoption and ratification agreement with Southern under which Fritz became a party to the contract between Exxon and Southern. The adoption and ratification agreement included the 1979 amendment.

### Litigation Posture

After learning of the initial proceedings in *Columbia Gas, supra,* Southern notified Fritz in March 1983 that Southern might violate the NGPA and Regulation 270.207 if it paid the deregulated price for gas as set forth in the 1979 amendment. Instead of paying Fritz the deregulated price, Southern chose to pay a lower price under an alternative pricing formula set out in the amendment. Fritz responded in May 1983 by filing an action against Southern for breach of contract in the Circuit Court of Marion County, Mississippi.

On June 30, 1983, Southern filed a petition for a declaratory order with FERC seeking a ruling on whether Regulation 270.207 prohibited Southern from paying Fritz the deregulated contract price. Fritz intervened in that action.

In the meantime, Southern answered Fritz's breach of contract action in the state trial court. Southern asserted that payment of the deregulated contract price might violate the NGPA, as construed by FERC in Regulation 270.207 and *Columbia Gas.* After a hearing on cross-motions for summary judgment, the state trial court, in July 1984, granted Fritz's motion for partial summary judgment, holding Southern liable for breach of contract. The court concluded that payment of the deregulated contract price would not violate Regulation 270.207. On August 5, 1987, the Supreme Court of Mississippi affirmed the grant of summary judgment in relevant part. *Southern Natural Gas Co. v. Fritz,* 523 So.2d 12 (Miss.1987). The Mississippi Supreme Court agreed with the trial court's conclusion that Regulation 270.207 did not prohibit Southern from paying the deregulated contract price.

A month after the Mississippi Supreme Court's decision, FERC issued its "Declaratory Order" on Southern's original petition. *Southern Natural Gas Co.,* 40 F.E.R.C. ¶ 61,225 (Sept. 11, 1987). Without a hearing and on a very limited record, FERC ruled that Regulation 270.207 prohibited Southern from paying Fritz the deregulated contract price. Citing *Columbia Gas,* FERC found that since the deregulated pricing provision in the 1979 amendment was tied to the dedication of additional regulated reserves, "the payment of the contract price to Fritz would violate [Regulation 270.207] because the payment of the deregulated rate would represent consideration for the dedication by Exxon to Southern of additional jurisdictional reserves." *Id.* at 61,772. FERC's order also stated what price could be paid for the deregulated gas without a violation of Regulation 270.207. *Id.* FERC subsequently denied petitions for rehearing. *Southern Natural Gas Co.,* 43 F.E.R.C. ¶ 61,454 (June 6, 1988).

Southern and Fritz have both filed petitions for review of FERC's orders. Fritz objects to the substance of the orders.

Southern objects to FERC's dicta regarding the price that could be paid without violating Regulation 270.207.

### Basic Jurisdiction

■■■■ Jurisdiction to interpret interstate gas sales contracts and to apply Regulation 270.207 to those contracts is vested in FERC. While this jurisdiction does not reach contracts relating solely to deregulated high-cost natural gas under 15 U.S.C. § 3317(c)(1), [*See* 15 U.S.C. § 3431(a)(1)(B)(i); *Pennzoil Co. v. FERC,* 645 F.2d 360, 380–81 (5th Cir.1981), *cert. denied,* 454 U.S. 1142, 102 S.Ct. 1000, 71 L.Ed.2d 293 (1982) ] FERC's duty to ensure compliance with price ceilings for regulated gas, 15 U.S.C. § 3414, defines its authority to determine which payments required under producer-pipeline contracts will be included in the "price" of regulated gas. *Wagner & Brown v. ANR Pipeline Co.,* 837 F.2d 199, 203 (5th Cir.1988). FERC's responsibility to effectively enforce compliance with the NGPA price ceilings requires that when sales of regulated and deregulated gas are contractually coupled, FERC's jurisdiction extends to determining whether any portion of the price paid for deregulated gas influenced the price paid for regulated gas. *Id.*

### Jurisdiction Applied

■■■ FERC's interpretation of the meaning of its regulations is entitled to great deference. *Pennzoil,* 645 F.2d at 383. Once FERC has interpreted a regulation, however, FERC must either conform to that precedent or adequately explain its reasoning for departing from the prior interpretation. *Laclede Gas Co. v. FERC,* 722 F.2d 272, 275 (5th Cir.1984).

Regulation 270.207 reads:

No portion of the price paid for the first sale of deregulated natural gas, as defined in § 272.103, or gas for which an application that the gas qualifies as deregulated natural gas is pending, may represent consideration for the sale of natural gas which is not deregulated natural gas.

18 C.F.R. § 270.207 (1988).

FERC has previously interpreted and applied Regulation 270.207. In *Columbia Gas,* Exxon was producing and selling to Columbia Gas Transmission Corporation (Columbia) deregulated gas at a deregulated price under an existing contract. In 1981, the parties amended the contract to increase the price payable for deregulated gas. As consideration for the amendment, Exxon agreed to commit to Columbia certain regulated gas reserves. Following an evidentiary hearing, a FERC Administrative Law Judge (ALJ) found that Columbia had agreed to the new deregulated pricing provision in order to obtain the dedication of additional reserves of price regulated gas, resulting in a violation of Regulation 270.207. *Columbia Gas,* 22 F.E.R.C. ¶ 63,093 at 65,351–65,353 (1982).

On appeal, FERC decided that Exxon may have violated Regulation 270.207 by charging more than the maximum lawful price for regulated gas, but this could not be determined without further evidentiary hearings. In interpreting Regulation 270.-207 FERC stated:

[I]n the case where the price of deregulated gas is increased in exchange for new reserves of regulated gas at the ceiling price, the price of the regulated gas exceeds the maximum lawful price because, in consideration for the regulated gas, the producer receives both the ceiling price and *additional* money for deregulated gas.

*Columbia Gas,* 26 F.E.R.C. ¶ 61,034 at 61,-122 (emphasis added). FERC ruled that Regulation 270.207 was violated "to the extent the pricing amendment causes the price for deregulated gas to exceed the price that otherwise would have been paid for this gas." *Id.* at 61,123. FERC reiterated that "the unlawful amounts received or paid are the amounts that Exxon received (and Columbia paid) under the July 1981 contract amendment for [deregulated] gas in excess of that which would have been received (and paid) in the absence of the contract amendment." *Id.* On rehear-

ing FERC affirmed these rulings, but remanded the case with instructions to identify what regulated gas was sold to Columbia by Exxon and to determine if Exxon had received a higher price for the unregulated gas than it otherwise would have received. FERC recognized this determination required consideration of the intent of the parties. 26 F.E.R.C. ¶ 61,034 at 61,123; 26 F.E.R.C. ¶ 61,334 at 61,727. On remand the ALJ held a second evidentiary hearing to consider testimony as to the intent of the parties and the circumstances surrounding the contract at issue.

*Columbia Gas* interpreted Regulation 270.207 to prohibit a producer from receiving more than the maximum lawful price for regulated gas through the receipt of a "premium" price for unregulated gas. It is only that premium portion of the price paid which represents consideration for regulated gas and results in a violation of Regulation 270.207. *Columbia Gas* required that the amount of any premium portion of the unregulated price representing consideration for regulated gas be determined after an inquiry into the facts, circumstances, and intent of the parties.

### Inconsistent Application

■ FERC did not follow its *Columbia Gas* precedent in applying Regulation 270.-207 to Fritz. Instead, FERC created a *per se* rule—because the pricing provision for unregulated gas is contractually tied to the commitment of additional reserves of regulated gas, Regulation 270.207 is violated. FERC bases its new rule on a statement in *Columbia Gas* that a violation of Regulation 270.207 would occur where the parties have "explicitly tied the alternative pricing provision for unregulated gas to the commitment of the regulated gas." *Southern Natural Gas Co.*, 40 F.E.R.C. ¶ 61,225 at 61,772 (quoting *Columbia Gas*, 26 F.E.R.C. ¶ 61,334 at 61,727.). However, the quoted statement is taken out of context. *Columbia Gas* does not hold that a contractual link *ipso facto* violates Regulation 270.207. The quoted statement merely rebutted an argument that the price increase for unregulated gas and the sale of regulated gas were not linked because they were not simultaneous. Indeed, in the paragraph following that statement *Columbia Gas* reiterated:

> The issue is what payments did Exxon receive in exchange for selling regulated gas to Columbia. To the extent Exxon received in exchange both a price increase for unregulated gas and payment of the maximum lawful price, this violates the NGPA.

26 F.E.R.C. ¶ 61,334 at 61,727. Resolving that issue required further factual inquiry beyond the contractual language.

*Columbia Gas* is consistent with FERC's final rule enacting Regulation 270.207. There, FERC clarified its intent that the regulation would not prohibit the mere association of regulated and unregulated gas in one contract. In that rule FERC noted the concern of commenters that an earlier proposed version of Regulation 270.207 implied that the price for deregulated gas should be covered by a separate contract. Final Rule Defining and Deregulating Certain High Cost Gas, F.E.R.C. Stat. & Reg. ¶ 30,147 at 31,012 (1980). In allaying that concern, FERC indicated that regulated gas could be sold in association with price-deregulated gas as long as all first sales of deregulated gas were billed separately so that FERC could detect and deter circumvention of price ceilings for regulated gas. *Id.* at 31,013. *See* 18 C.F.R. § 272.105 (requiring separate billing for deregulated gas).

FERC did not make the factual inquiry necessary to determine whether any portion of the price for deregulated gas represented consideration for the sale of regulated gas. Rather than holding an evidentiary hearing, or expanding the record to consider all available evidence regarding the intent of the parties, the course of performance or market conditions, FERC merely relied on the coupling found in the contract amendment and assignment. *Southern Natural Gas Co.*, 43 F.E.R.C. ¶ 61,454 at 62,124–25. Both *Columbia Gas* and this circuit's prior precedent recognize that contract language cannot be made the be-all and end-all of FERC's analysis. *See Hunt Oil Co. v. FERC*, 853 F.2d 1226, 1237 (5th

Cir.1988). FERC even recognized, albeit in dicta, that, without the contractual link, "Fritz may be entitled to receive nearly as much [for the deregulated gas] at comparable market prices." *Southern Natural Gas Co.*, 40 F.E.R.C. ¶ 61,225 at 61,772.

FERC's orders in the instant case contain no analysis or explanation of how merely linking a deregulated price provision to the commitment of regulated gas would violate Regulation 270.207. Because FERC inexplicably departed from its previous construction and application of Regulation 270.207, its orders in this case cannot stand.

### *Judicial Economy*

■ In other circumstances, our ruling would have required a remand to FERC for further factual determinations. Here, however, we have the benefit of parallel proceedings in the Mississippi state courts which have litigated the intent of the parties and made the necessary factual determinations in the context of Regulation 270.-207 and in accordance with FERC's interpretation of the regulation in *Columbia Gas.*

"While FERC has special expertise to interpret the regulation itself, the question of the parties' intent is a different matter altogether." *Pennzoil*, 645 F.2d at 386. Courts can easily be informed of the language, purpose and history of a regulation when presented with a specific contract for interpretation. *Id.*

In accord with Regulation 270.207 and the procedures set out in *Columbia Gas* the state courts made factual findings regarding the intent of the parties and the meaning of the 1979 amendment between Exxon and Southern, the assignment by Exxon to Fritz, and the adoption and ratification agreement between Fritz and Southern. The findings were based on substantial evidence, including extensive depositions of the persons who negotiated and drafted the agreements at issue, as well as voluminous documents produced by the parties. *Southern Natural Gas Co. v. Fritz*, 523 So.2d 12, 14 (Miss.1987).

Based on such evidence, the trial court in its Summary Judgment Order found there was no factual relation between the agreement to sell regulated Mississippi Canyon Gas and the price to be paid for decontrolled gas from the Fritz well. It found no other interrelationships or considerations which would affect the price to be paid for the Sandy Hook gas produced under the contracts in question. The court further found that the 1979 contract did not increase any deregulated price and the Mississippi Canyon sale had no direct correlation with the specific provision for sale of Sandy Hook deep, high cost gas. The trial court concluded that payment of the deregulated contract price would not violate Regulation 270.207.

In affirming the trial court's judgment in light of the extensive factual record, the Mississippi Supreme Court stated:

The October 5, 1979, amendment of the Sandy Hook contract did not increase an existing deregulated price. Prior to the amendment, no deregulated price was payable under the contract. The amendment in fact provided for the first deregulated price which was payable under the contract.

At the time of the October 5, 1979, amendment of the Sandy Hook contract, no deregulated gas was then being produced from the Sandy Hook Field, no gas was then being produced which was subsequently determined to be deregulated gas, and no wells were even drilling for deregulated gas at Sandy Hook. Further, the Exxon Gas Contracts Department in Houston was not aware of any deregulated prospects whatsoever in the entire State of Mississippi.

The amendment of all of the existing Exxon–Southern contracts, including the Sandy Hook contract, occurred as part of the usual and customary practice of periodically upgrading and modernizing contract provisions and long term gas contracts.

The deregulated price which was payable under the October 5, 1979, amendment was the same deregulated price which Southern was then paying and offering to other producers of deregulated

gas, and, in some cases, was even less than the deregulated price which Southern was paying and offering other producers for deregulated gas.

The deregulated price which was payable under the Sandy Hook amendment was in some cases less than the deregulated price which Exxon was being offered or being paid by other purchases elsewhere for deregulated gas which Exxon was selling.

523 So.2d at 16.

■ The factual findings of the Mississippi court made and affirmed in the context of appropriate deference to FERC's regulations and procedure for interpretation renders a remand unnecessary. Based on those factual findings and conclusions, we hold that no portion of the price Southern agreed to pay Fritz for Sandy Hook Gas represented consideration for regulated gas. According to the standards adopted in *Columbia Gas*, payment for unregulated gas under the pricing provision in the contract between Fritz and Southern do not violate Regulation 270.207.

### Conclusion

FERC's declaratory order and its order denying rehearing represent an unreasoned departure from prior FERC precedent. This decision makes it unnecessary to consider Southern's petition for review. The orders of the Federal Energy Regulatory Commission sought to be reviewed are VACATED.

JOHN R. BROWN, Circuit Judge, concurring.

I concur fully in the Chief Judge's opinion for us. I write separately to emphasize some fundamental things. FERC is supreme. The interpretation and application of Reg. 270.207 is that prescribed by FERC in *Columbia Gas*. Happily the interpretation/application of the regulation by the Mississippi Supreme Court conforms to that announced by FERC. Indeed, the FERC dicta, of which *Southern* complains, substantially parallels what the Supreme Court of Mississippi pronounces. Instead of there being a challenge to the exclusive power of FERC to determine the basic question [1] this court, by its analysis, makes it constitutionally possible for both tribunals working in harmony to be useful forces in bringing about a just, completely lawful disposition with complete avoidance of wasteful judicial resources.

---

1. This lurking possibility might have brought about the Supreme Court's request that the Solicitor General file a response to the application for certiorari to the Supreme Court of Mississippi. —— U.S. ——, 109 S.Ct. 216, 102 L.Ed.2d 207 (1988).