**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**June 24, 2005**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 04-50838

---

ASAP PAGING INC,

                            Plaintiff-Appellant,

        versus

CENTURYTEL OF SAN MARCOS INC;
CENTURYTEL SERVICE GROUP LLC;
CENTURYTEL SECURITY SYSTEMS OF
TEXAS LP; CENTURYTEL INC,

                            Defendants-Appellees.

---

Appeal from the United States District Court
for the Western District of Texas
1:04-CV-181-SS

---

Before GARWOOD, GARZA and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

        ASAP Paging, Inc. (ASAP) appeals the dismissal without

prejudice of its antitrust, Communications Act, and tortious

interference claims against CenturyTel of San Marcos, Inc.,

CenturyTel Service Group, L.L.C., CenturyTel Security Systems of

---

[*]Pursuant to 5TH CIR. R. 47.5 the Court has determined that this opinion
should not be published and is not precedent except under the limited
circumstances set forth in 5TH CIR. R. 47.5.4.

Texas, L.P., and CenturyTel, Inc. (collectively, CenturyTel). We affirm the district court's dismissal of the antitrust claims. We vacate the dismissal of the remaining claims and remand to the district court with instructions to stay these claims pending the outcome of related proceedings in state court and with the Federal Communications Commission (FCC).

### Facts and Proceedings Below

ASAP provides paging services and access to Internet service providers (ISPs) for customers in San Marcos, Texas and the surrounding communities of Fentress, Kyle, and Lockhart. CenturyTel is the incumbent local telephone company for San Marcos. There is an extended local calling service (ELCS) arrangement between the San Marcos exchange and several surrounding exchanges, including those of Kyle, Fentress and Lockhart, such that calls between these exchanges are charged at a local call rate. ASAP obtained telephone numbers from the FCC pursuant to its license as a commercial mobile radio service (CMRS) provider, and chose numbers that are normally associated with the Fentress, Lockhart, and Kyle exchanges. Calls to these phone numbers are routed by the relevant local telephone carriers to ASAP's switch, which was located in Austin, outside of the San Marcos ELCS area, during 2001 and 2002.

From October 2001 through March 2002, CenturyTel customers in San Marcos could dial ASAP's numbers assigned to Lockhart, Fentress

or Kyle as local calls. Starting on April 1, 2002, however, CenturyTel began charging these calls as long-distance calls. This resulted in a greatly reduced call volume to ASAP's customers having these phone numbers. According to CenturyTel, it started charging calls to the ASAP numbers as toll calls once it determined that the calls were going to ASAP's switch in Austin.

ASAP immediately filed a complaint with the Texas Public Utility Commission (PUC), asking the commission to order CenturyTel to stop assessing toll charges on the calls. In an order issued October 9, 2003, the PUC ruled against ASAP, finding that the geographic location being called, rather than the exchange associated with the number being called, should determine whether a call is rated local or long distance. The commission also found that CenturyTel was following the tariff it filed with the PUC in assessing the toll charges. ASAP's appeal of the PUC order is currently working its way through the Texas court system.

In October or November of 2003, ASAP installed a switch in Kyle, which is in the San Marcos ELCS area. CenturyTel refused to rate calls from San Marcos to this Kyle switch as local, however. CenturyTel indicated to ASAP that ASAP would have to establish a direct interconnection with CenturyTel through an interconnection agreement, rather than the existing indirect connection through

3

another telephone company, in order for the calls to be rated as other than toll calls, regardless of the location of the switch.[1]

In December of 2003, ASAP filed a Petition for Preemption with the FCC, requesting that the FCC preempt the PUC order in accordance with the FCC's authority to preempt state regulation that has the effect of prohibiting the provision of telecommunications service. *See* 47 U.S.C. §§ 253(d), 332(c)(3). The FCC has not acted on this petition, which remains pending before it.

ASAP subsequently filed a complaint in the Western District of Texas including federal and state antitrust claims, state tortious interference claims, and claims for damages under sections 206 and 207 of the Communications Act (47 U.S.C. §§ 206, 207), alleging violations of 47 U.S.C. §§ 201, 202, 251(a) and 251(b)(3). *Id.* at 38–42. ASAP points out in the complaint that some of its claims may be nearing the end of statute-of-limitations periods, and suggests that abatement of the action pending disposition of the petition for preemption to the FCC could be helpful to the court.

CenturyTel filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that (1) all of the claims are barred by the filed rate doctrine, (2) the antitrust claims are defective and barred as a matter of law by the Supreme

---

[1]The Telecommunications Act of 1996 provides for interconnection agreements between telecommunications carriers establishing compensation between the carriers for various services. *See* 47 U.S.C. §§ 251(c)(1), 252. There is no interconnection agreement between ASAP and CenturyTel.

Court's decision in *Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*, 124 S.Ct. 872 (2004), and (3) that the claims under the Communications Act should be dismissed because of the "primary jurisdiction" of the FCC. After a response to the motion, reply to the response, and a hearing, the district court issued an order dismissing ASAP's claims without prejudice. The court found that all of ASAP's claims are barred by the filed rate doctrine, and that, alternatively, the antitrust claims are barred by the *Trinko* decision and the Communications Act claims are barred by the doctrine of primary jurisdiction. ASAP appeals.

## Discussion

### I.  Standard of Review

This court reviews a dismissal for failure to state a claim *de novo*. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 375 (5th Cir. 2004). The claim should be dismissed "only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (quoting *Conley v. Gibson*, 78 S.Ct. 99, 102 (1957)).

### II.  Filed Rate Doctrine and Doctrine of Primary Jurisdiction

Under the "filed rate doctrine" (also sometimes called the "filed tariff doctrine"), when a carrier is required to file a tariff of its charges with a regulatory body, the charges filed are the only charges that the carrier may lawfully assess. *Am. Tel. & Tel. Co. v. Cent. Office Tel., Inc.*, 118 S.Ct. 1956, 1962–63

5

(1998). The carrier cannot deviate from the tariff, and the terms of the tariff can be initially challenged only before the agency that approved the tariff, not in a court. *Arsberry v. Illinois*, 244 F.3d 558, 562 (7th Cir. 2001); *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 216–17 (Tex. 2002). ASAP argues that the filed rate doctrine does not apply to its dispute with CenturyTel because ASAP is not challenging the terms of the tariff, but rather CenturyTel's (and the PUC's) interpretation of the tariff: specifically, whether calls to ASAP's numbers should be classified as local or toll for application of the tariff.

There is no indication in the record that CenturyTel's filed tariff directly addresses which rate should be applied to calls to numbers such as ASAP's. Whether CenturyTel is following its tariff such that the filed rate doctrine would apply therefore depends on whether the PUC's interpretation of CenturyTel's tariff survives review by the state appellate courts and the FCC. In the event that either a Texas court or the FCC overturns the PUC's interpretation of the tariff, ASAP may have rights against CenturyTel that will be lost through the running of statutes of limitations. Staying the action in the district court to avoid this potential prejudice to ASAP is therefore the appropriate course, particularly since the district court seems to have intended that ASAP be able to present its claims again depending on

the outcome of the other proceedings.[2]  In addition, this approach would allow time for ASAP to obtain a ruling from the PUC on whether CenturyTel was following its tariff in refusing to rate calls to ASAP's Kyle switch as local calls.[3]

The district court also dismissed ASAP's Communications Act claims based on the doctrine of primary jurisdiction.  The doctrine of primary jurisdiction applies either when a government agency has exclusive original jurisdiction over an issue within a case or when a court having jurisdiction wishes to defer to an agency's superior expertise.  *Arsberry*, 244 F.3d at 563.  These circumstances do not appear to apply to ASAP's Communications Act claims.  Although the district court indicated that ASAP had requested that "the FCC exercise jurisdiction over each of its [Telecommunications Act] claims," ASAP's Petition for Preemption does not appear to be an assertion of Communications Act or Telecommunications Act claims against CenturyTel.  Under 47 U.S.C. § 207, ASAP may complain of being damaged by CenturyTel either to the FCC or in federal district court, and ASAP has chosen to do so in district court.[4]

---

[2]In addition to dismissing the claims without prejudice, the court asked CenturyTel about its willingness to waive statute-of-limitations defenses.

[3]The PUC appears to have exclusive primary jurisdiction on this question, which it has not yet considered with respect to the Kyle switch.  TEX. UTIL. CODE § 52.002(a) (stating that the PUC "has exclusive original jurisdiction over the business and property of a telecommunications utility," subject to certain limitations).

[4]Section 207 provides:
    "Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the

ASAP's petition for preemption is not a submission of its claims against CenturyTel to the FCC, but instead it is essentially a claim against the PUC, specifically an assertion that the PUC's interpretation is preempted by federal law.

Even to the extent that the doctrine of primary jurisdiction could be applied to any of ASAP's claims, a court "must weigh the benefits of obtaining the agency's aid against the need to resolve the litigation expeditiously and may defer only if the benefits of agency review exceed the costs imposed on the parties." *Wagner & Brown v. ANR Pipeline Co.*, 837 F.2d 199, 201 (5th Cir. 1988). When dismissal may cause a plaintiff to lose rights, claims should be stayed pending deferral to an agency rather than dismissed. *Id.* at 206. Staying of the case pending the outcome of the state court and FCC proceedings is therefore appropriate for any dismissals based on the primary jurisdiction doctrine as well as for those based on the filed rate doctrine.

### III. Antitrust Claims

The district court dismissed ASAP's antitrust claims as barred by the Supreme Court's *Trinko* decision, in addition to dismissing them under the filed rate doctrine. Although we do not agree with the district court's apparent rationale, that the antitrust claims

---

damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies."
47 U.S.C. § 207.

should be dismissed by virtue of being premised on the Telecommunications Act, dismissal of the antitrust claims was nonetheless proper.

The Supreme Court noted in *Trinko* that the Telecommunications Act specifically provided that it would not impair or supersede antitrust law. *Trinko*, 124 S.Ct. at 878. The Court held that the Telecommunications Act did not *expand* the coverage of the antitrust laws, however, so that the complained-of behavior would need to constitute an antitrust violation in its own right for an antitrust action to lie. *Id.* The Court characterized the claim in *Trinko* as a refusal-to-deal claim and noted that the Sherman Act generally does not restrict a private entity's refusal to deal, except in certain egregious circumstances such as those in *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 105 S.Ct. 2847 (1985). *Trinko*, 124 S.Ct. at 879. The Court proceeded to compare the complained-of actions to those in *Aspen Skiing*, stating that *Aspen Skiing* was "at or near the outer boundary of § 2 liability."[5] *Id.* at 879–80. The Court determined that the refusal to deal alleged in *Trinko* did

_____

[5]In *Aspen Skiing*, the defendant, who operated three ski resorts in the area, decided to stop participating with the plaintiff, who operated the fourth resort, in a joint all-resort ski ticket. *Trinko*, 124 S.Ct. at 879; *Aspen Skiing*, 105 S.Ct. at 2851–52. The defendant refused all efforts by the plaintiff to reinstate the ticket, even an offer to essentially buy the defendant's tickets at retail price. *Trinko*, 124 S.Ct. at 879; *Aspen Skiing*, 105 S.Ct. at 2853. In upholding a verdict for the plaintiff, the Court in *Aspen Skiing* found significant that the defendant ended a previous voluntary practice that was presumably profitable, and would not accept retail price. This indicated a "willingness to forsake short-term profits to achieve an anticompetitive end." *Trinko*, 124 S.Ct. at 880; *Aspen Skiing*, 105 S.Ct. at 2861.

"not fit within the limited exception recognized in *Aspen Skiing*," since factors indicating a willingness to forgo short-term profit for anticompetitive purposes were absent.[6] *Id.*

ASAP's complaint alleges that CenturyTel's decision to rate its customers' calls to ASAP's numbers as long distance was part of a scheme to harm ASAP as a competitor in the one-way inbound call capability market. This is essentially a milder form of the refusal-to-deal claim in *Trinko*. In *Trinko*, the defendant allegedly refused to connect competitors, while in this case, CenturyTel allegedly refused to connect ASAP on favorable enough terms. CenturyTel's conduct should therefore be compared to that of the defendant in *Aspen Skiing* to see whether an antitrust action can be recognized.

Although ASAP claims that CenturyTel "voluntarily" rated calls to their numbers as local from October 2001 through March 2002, the complaint does not allege that CenturyTel understood where ASAP's switch was located at that time. So there is no indication that the prior arrangement was agreed to, and therefore presumably profitable, in the manner of the ski ticket arrangement in *Aspen Skiing*. And there is otherwise nothing that would suggest that

---

[6]In *Trinko*, a customer of a competing local exchange carrier sued Verizon, the incumbent local exchange carrier, when Verizon fell behind on filling orders by competing carriers for access to its network. *Trinko*, 124 S.Ct. at 876-77. The plaintiff did not claim that Verizon had previously engaged in a voluntary course of dealing with its competitors, and Verizon did not refuse an offer at retail price, but rather refused (according to the plaintiff) to provide services at a statutory wholesale rate. *Id.*

CenturyTel is giving up short-term profits in hopes of running ASAP out of business. CenturyTel gets more short-term profit, not less, by charging the calls to ASAP's numbers as toll calls. Even if no one calls ASAP anymore when the calls are rated as toll, CenturyTel is not giving up profits as compared to rating calls to ASAP as local, because CenturyTel's customers pay a flat fee for local service. ASAP's allegations do not fit into the *Aspen Skiing* exception for refusal-to-deal claims, and therefore do not state a cognizable antitrust claim. The antitrust claims were therefore properly dismissed.[7]

## Conclusion

Because ASAP's antitrust claims are barred by the Supreme Court's *Trinko* decision, we AFFIRM the district court's dismissal of the antitrust claims. We VACATE the dismissal of the Communications Act and tortious interference claims and REMAND to the district court with instructions to stay these claims pending the outcome of the state court appeals of the PUC order and the Petition for Preemption with the FCC.

---

[7]Texas law instructs that Texas antitrust provisions "be construed in harmony with federal judicial interpretations of comparable federal antitrust statutes." TEX. BUS. COMM. CODE § 15.04. Dismissal of both the state and federal antitrust claims was therefore proper.

11